UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHILDES M. McCASLIN, IV | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-1555-TAB-JDT |
| | ) | |
| INTERNATIONAL BROTHERHOOD | ) | |
| OF TEAMSTERS LOCAL 135, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS

**I.   Introduction.**

On May 5, 2003, after a day of surveillance, Defendant USF Holland, Inc. ("USF") terminated one of its truck drivers, Plaintiff Shildes M. McCaslin, IV, for allegedly stealing time while making his deliveries.  McCaslin, a member of Defendant International Brotherhood of Teamsters Local 135 ("Local 135"), denied the charges and Local 135 filed a grievance on his behalf.  Local 135 pursued the grievance, exhausting all avenues of appeal, to no avail. Thereafter, McCaslin filed the instant lawsuit pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, claiming that USF breached the collective bargaining agreement ("CBA") when it terminated him, and that Local 135 breached its duty of fair representation during the grievance process.[1]  In addition, McCaslin alleges fraud and

---

[1] McCaslin also filed claims against the International Brotherhood of Teamsters, Excel Tool, Inc., Beacon Industries, Inc., Darrell Morris, and Jesse Asher alleging a variety of actions including fraud and defamation.  McCaslin voluntarily dismissed these Defendants.  [Docket Nos. 38, 39, 67].

defamation against USF.[2]  Both Local 135 and USF have moved for summary judgment on all counts.  [Docket Nos. 68, 70].  Local 135 seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, alleging that McCaslin's claims are frivolous.  For the reasons stated below, Defendants' motions for summary judgment are granted and Local 135's motion for sanctions is denied.

## II.     Summary Judgment Standard.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Lucas v. Chicago Transit Authority, 367 F.3d 714, 720 (7th Cir. 2004).  At the summary judgment stage, the Court construes all facts and draws all reasonable inferences in the light most favorable to McCaslin, the nonmoving party.  Davis v. Con-Way Transp. Central Express, Inc., 368 F.3d 776, 779 (7th Cir. 2004).  However, because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, McCaslin must respond to the Defendants' motions with evidence setting forth specific facts showing that there is a genuine issue for trial.  Vukadinovich v. Board of School Trustees of North Newton School Corp., 278 F.3d 693, 698 (7th Cir. 2002).   McCaslin fails in this respect.

In this district, summary judgment procedure is governed by Local Rule 56.1, which

---

[2]McCaslin voluntarily dismissed his fraud and defamation claims against Local 135. [Docket No. 74].  However, these claims remain pending as to USF.

states in relevant part that a non-moving party's brief "shall include a section labeled 'Statement of Material Facts in Dispute' <u>which responds</u> to the movant's asserted material facts." (emphasis added).  S.D. Ind. L.R. 56.1(b).  As this Court has held, "[w]hile this does not require a nonmoving party to respond to each and every fact, point by point, it does require that the nonmoving party submit potentially determinative facts and identify factual disputes" that the party contends preclude summary judgment.  <u>Fox v. Lear Corp.</u>, 327 F. Supp.2d 946, 948 (S.D. Ind. 2004).  McCaslin failed to contest many of Defendants' facts.  Accordingly, to the extent those facts are supported by admissible evidence, the Court assumes they are admitted.  S.D. Ind. L.R. 56.1(e).  <u>See</u> also <u>Rayl v. Decision One Mortg. Co.</u>, 2003 WL 21989992, at *2 (S.D. Ind. 2003) ("While it is certainly proper, if not necessary, for a nonmovant to submit additional, unresponsive facts when opposing a summary judgment motion, failure to respond to the movant's facts may be perilous to the nonmovant's case.").

### III.  Background.[3]

USF Holland requires its drivers to accurately report the arrival and departure times for every delivery, at the time of the delivery, on a manifest sheet.  [McCaslin Dep., p. 180; McCrary Dep., p. 114].  In addition, drivers must report their whereabouts, including any delays, to the dispatcher throughout the day.  [McCaslin Dep., pp. 180-83; McCrary Dep., p. 114; USF Ex. 3].  McCaslin was aware of these reporting requirements and understood their importance.  [McCaslin Dep., pp. 170-72, 180-85].  To assure accuracy, USF audits driver manifests for discrepancies and routinely conducts surveillance on those drivers whose manifests appear

---

[3]The facts are either undisputed or viewed in a light most favorable to McCaslin, the non-moving party.  In addition, this background section is a brief overview of the facts, not an exhaustive recitation of all material facts.

questionable. [McCrary Dep., pp. 27-28, 114-15; Woolsey Dep., pp. 29-30, 35-36; McCaslin Dep., pp. 172-73, 275]. Pursuant to this practice, Operations Manager David Woolsey conducted surveillance on McCaslin on May 5, 2003. [Woolsey Aff., ¶ 2].

During the surveillance, Woolsey followed McCaslin's truck and kept a log of McCaslin's arrival and departure times for each stop. [Woolsey Dep., pp. 69-72; USF Ex. 6]. In addition, dispatcher Mike Wiskirchen kept track of McCaslin's calls to the terminal. [Woolsey Dep., p. 121; USF Ex. 7; USF Ex. 19]. Woolsey noted that McCaslin took several unscheduled breaks and Woolsey reported his observations to dispatch. [Woolsey Dep., pp. 75, 121-22; USF Ex. 6]. When McCaslin's reports to dispatch did not reconcile with Woolsey's account, Terminal Manager Vicky McCrary phoned customers, including Excel Tool, Inc. ("Excel"), Beacon Industries ("Beacon"), and Union Hardware, to verify the timing of McCaslin's deliveries. [McCrary Dep., pp. 54-55, 63-64].

After confiscating McCaslin's manifest, Woolsey compared the manifest to his own observations during the surveillance. [McCaslin Dep., p. 207; Woolsey Dep., pp. 85-87]. McCaslin's manifest did not match what Woolsey had witnessed. [Woolsey Dep., pp. 87-88; USF Ex. 2; USF Ex. 6]. Woolsey believed that McCaslin recorded more time than it actually took to make his deliveries and sat idle while dispatch assumed that he was still busy making his deliveries. Woolsey arrived at this conclusion based on what he had observed, McCaslin's calls to dispatch, McCrary's verification through customers, and the contents of McCaslin's manifest. [Woolsey Aff., ¶ 4].

After arriving back at USF's terminal, McCaslin met with Woolsey, McCrary, USF Manager Steve Johnson, and Local 135 steward Kenny Jones. [McCaslin Dep., pp. 221-22].

During this meeting, McCaslin confirmed that the manifest Woolsey had confiscated was his and stated that it was accurate. [USF Ex. 8, p. 28; Woolsey Dep., p. 122; McCrary Dep., p. 115]. Woolsey then explained what he and the others had witnessed and asked McCaslin to admit to what he had done. [Woolsey Dep., pp. 109-10]. McCaslin refused. [Woolsey Dep., pp. 109-10]. Woolsey then discharged McCaslin. [Woolsey Dep., pp. 109-10]. The next day, Local 135's steward filed a grievance on McCaslin's behalf protesting his discharge. [McCaslin Dep., p. 7; USF Ex. 9].

On May 6, 2003, McCrary visited several customers regarding McCaslin's deliveries on the previous day, including Excel, Union Hardware, and Beacon. [McCrary Dep., pp. 115-22]. Each customer provided McCrary with a copy of the previous day's freight bill and statements regarding the timing of the delivery. [McCrary Dep., pp. 115-22; USF Exs. 10-13]. Darrell Morris noted that Excel "received this shipment by 10:30 a.m. on 5-5-03." [McCrary Dep., pp. 119-22; USF Ex. 10]. Union Hardware provided a note stating that "the delivery was complete shortly after 12:00 noon." [USF Ex. 12]. Finally, Beacon employee Jesse Asher indicated on a copy of the bill that "the delivery took under 10 mins." [USF Ex. 13].

On May 14, 2003, Local 135 Business Agent Jerry Lyons met with McCaslin, McCrary and Woolsey. [McCaslin Dep., pp. 152-54; Lyons Dep., pp. 48-51]. At that meeting, Lyons negotiated with USF to offer McCaslin his job back. [Lyons Dep., pp. 26-27, 48-51]. McCrary agreed so long as McCaslin would admit to what he had done. [USF Ex. 14; Lyons Dep., pp. 26-27, 48-51]. McCaslin rejected the offer. [McCaslin Dep., p. 46; USF Ex. 14; Lyons Dep., pp. 26-27, 48-51].

Local 135 represented McCaslin at three separate grievance hearings at the city, state and

area levels. Specifically, on May 20, 2003, Local 135 presented the grievance to the City Committee. [USF Ex. 15]. When City Committee deadlocked, Local 135 represented McCaslin before the State Committee the following day. [USF Ex. 8]. The State Committee also deadlocked. [McCaslin Dep., p. 17; USF Ex. 8, p. 30]. Finally, on June 10, 2003, Local 135 presented McCaslin's grievance to Area Committee. At the Area Committee, however, McCaslin lost on the merits and his discharge was upheld. [USF Ex. 16, p. 120].

Before the State hearing, McCaslin received notice that he should "be certain that [Local 135] has all the facts pertaining to [his] case so that [Local 135] may properly represent" him. [USF Ex. 17]. Likewise, before the Area Committee hearing, McCaslin received notice that it was his "responsibility to contact [Lyons] and make sure [Lyons] has all the facts and/or witnesses pertaining to [his] case, so that [Lyons] may properly represent" him. [USF Ex. 18]. McCaslin did not give Lyons any documents to introduce on his behalf. [Lyons Dep., p. 93].

At all three hearings, Local 135 argued that USF should reinstate McCaslin with backpay. [McCaslin Dep., p. 9; USF Ex. 15, p. 10; USF Ex. 8, p. 27]. McCaslin conceded at the hearings that he had been given a fair opportunity to present all his evidence and that Local 135 had provided him proper and adequate representation. [USF Ex. 15, p. 19; USF Ex. 8, p. 29; USF Ex. 16, pp. 119-20; McCaslin Dep., pp. 10-11, 14, 17, 28-31]. In addition, during the grievance process, McCaslin did not express dissatisfaction with the way Local 135 was handling his grievance. [McCaslin Dep., pp. 169-70]. Finally, Local 135 exhausted the grievance process with respect to McCaslin's grievance. The decision of the Area Committee was final and binding on Local 135 and McCaslin. [USF Ex. 4, p. 234; McCaslin Dep., p. 38; Barton Dep., p. 40].

McCaslin concedes that at least some of the times on his manifest are wrong. McCaslin admits that the delivery to Union Hardware actually occurred "before noon," not at 2:40-2:50 in the afternoon as he had reported. [McCaslin Dep., pp. 205-06, 235; USF Ex. 8, p. 19]. McCaslin also concedes that the times he wrote in for Beacon -- 2:17-2:29 -- were also incorrect as he was actually parked at Beacon for "at least 30 minutes." [McCaslin, pp. 201, 205-06; USF Ex. 8, p. 23]. Finally, McCaslin agrees that because he actually delivered to Union Hardware around noon, and his manifest contains sequential times without excess time in between for another delivery, at least one of the other times McCaslin recorded around noon must also be wrong. [McCaslin Dep., pp. 235-38].

**IV.  Discussion.**

As noted above, McCaslin claims that USF breached the CBA and Local 135 breached its duty of fair representation. Such claims are known as "hybrid 301" actions. Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1241 (7th Cir. 1997). "In order for a plaintiff to prevail in such an action, he must have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails." Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir. 2003). Here, the Defendants argue that McCaslin's hybrid 301 action must fail because neither claim has merit. For the reasons that follow, the Court agrees.

**A.  Breach of the CBA.**

The parties agree that, according to Article 46 of the Central Region Local Cartage Supplemental Agreement, USF could not terminate McCaslin without just cause. However, the parties have not provided the Court with a complete copy of Article 46, which pertains to

discharge and suspension.  See [USF Ex. 4].  Thus, it is unclear if the CBA specifically defines "just cause."  The limited section of Article 46 in evidence states that "the Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employ- . . . ."  [USF Ex. 4, p. 235].  The passage ends abruptly because the parties did not submit the next page of the agreement.  Thus, it is impossible to determine what relevance, if any, the remaining undisclosed portions of Article 46 have on the Court's determination.  Nonetheless, as explained below, McCaslin does not take issue with Defendants' position that McCaslin's alleged infractions supply just cause.[4]  Accordingly, neither will the Court.  Instead, McCaslin denies the accusations, alleging the existence of a complex conspiracy to wrongfully terminate him.  McCaslin's argument in this regard is unpersuasive.

In essence, McCaslin argues that USF breached the CBA because McCaslin has continuously disavowed any wrongdoing and because some discrepancies existed in the documentation presented at the various grievance hearings.  However, as explained below, McCaslin's arguments do not raise a genuine issue of material fact.  Moreover, "[w]hether the undisputed facts of a particular case establish just cause is a question of law for the court." Crider, 130 F.3d at 1242.

The Seventh Circuit Court of Appeals has repeatedly rejected conspiracy theories that are supported by little more than a terminated employee's bare allegations.  See Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1007 (7th Cir. 2002) ("We have typically been wary of

---

[4]Indeed, McCaslin agrees that just cause exists for termination if an employee "adds more time than what he's worked" or for "stealing time."  [McCaslin Dep., pp. 184-85].

8

allegations based on nothing but an attempt to come up with a conspiracy theory and in particular where there is not a scintilla of evidence in the record before us to support [the former employee's] theory."); Murray v. Chicago Transit Authority, 252 F.3d 880, 888 (7th Cir. 2001) ("This court 'has typically been skeptical of such elaborate plot theories.'"); Konowitz v. Schnadig Corp., 965 F.2d 230, 234 (7th Cir. 1992) (same). Such is the case here.

The first element of McCaslin's conspiracy theory relates to his manifest. To this end, McCaslin's brief describes how, under normal circumstances, the driver's name is placed on the top of his manifest before the driver starts his route. In addition, the name should appear at the top of each copy of the manifest identically because the manifest is printed on a multi-page carbon form. McCaslin alleges that this is important because the "McCaslin" at the top of the dispatcher's copy of the manifest and the "McCaslin" at the top of the manifest presented at the Area Committee hearing are different. According to McCaslin:

> There is a genuine issue of material fact regarding why McCaslin's name is written in different handwriting on the May 5, 2003, manifest. Further, USF Holland employee Dave Woolsey, indicates that McCrary tampered with the evidence and wrote the name "McCaslin" at the top of the manifest after McCaslin was discharged and in preparation of [sic] the grievance hearings. USF Holand's [sic] own witnesses create genuine issues of material fact regarding when USF Holland tampered with the driver manifest.

[Docket No. 75, p. 13] (internal citation omitted).

Factually, McCaslin is correct. The "McCaslin" written on the dispatcher's copy is different from the "McCaslin" written on the manifest presented to the Area Committee. [Compare USF Ex. 2 with USF Ex. 7]. However, the Court fails to see how this difference is material. Other than the handwriting of the name written at the top, McCaslin does not challenge the information contained within the body of the dispatcher's log. In addition, dispatcher Wiskirchen provided a written statement detailing the same information as that contained in his

9

log. [USF Exs. 7, 19]. In short, McCaslin's argument in this regard is unconvincing.

Likewise, McCaslin is again correct that the manifest presented at the City and State hearings did not contain his name at the top. Yet, at the Area hearing, McCaslin's name suddenly appeared. Once again, the Court fails to grasp the relevance of this discrepancy. USF agrees that the copy of McCaslin's manifest presented at the City and State hearings did not contain McCaslin's name at the top. According to USF, the addition of the name to the Area hearing manifest "was completely innocent." No matter. McCaslin acknowledged that the "unnamed" manifest presented at the City and State hearings was his. [USF Supp. Ex. 1, p. 12; USF Ex. 8, p. 20]. In addition, the manifest presented at the Area hearing, i.e. the manifest with McCaslin's name written at the top, is identical to the unnamed manifest in all other respects. [Compare USF Ex. 2 with Pl.'s Ex. B]. In short, the substance of the manifest is not in dispute. Thus, McCaslin's attempt to create a question of material fact on this issue fails.

McCaslin also disputes the existence of just cause for his termination because USF has not provided documentary evidence relating to McCaslin's selection for surveillance.[5] According to McCaslin, the "question of why or how McCaslin was chosen to be followed will ultimately go unanswered" because USF destroyed McCaslin's pre-May 5, 2003 manifests pursuant to its document retention policy. [Docket No. 75, p. 15]. Therefore, McCaslin argues, "it is unclear if McCaslin's other manifests would reveal any information justifying the decision

---

[5]Indeed, McCaslin goes so far as to accuse USF of improperly destroying relevant documents during the pendency of this action. The Court does not take such accusations lightly. If true, such actions could result in serious repercussions for the wrongdoer. Nonetheless, the Court does not address this issue. First and foremost, as noted in the body of this entry, the documents in question have little or no relevance. In addition, the legitimacy of such allegations may be reasonably questioned given that they were buried, and not adequately developed, in a response to a motion for summary judgment.

to have him followed.  This absence of evidence or adequate explanation of the decision to follow and subsequently terminate McCaslin also calls into issue whether he was terminated with 'just cause.'" [Docket No. 75, p. 16].  The Court disagrees.  The issue before the Court is whether USF had just cause to terminate McCaslin.  It is not whether USF had just cause to place McCaslin under surveillance.  According to the undisputed facts, USF terminated McCaslin for falsifying his May 5, 2003 manifest.  Therefore, the Court finds that McCaslin's prior manifests have no -- or at most, very little -- relevance to the ultimate issue.  McCaslin's argument in this regard does not create a question of material fact.

      Finally, McCaslin argues that a material question of fact exists regarding whether USF had just cause to terminate him because certain delivery receipts are of questionable authenticity.[6]  According to McCaslin, his signature was forged because it looks identical to his signature on other delivery receipts.  McCaslin goes into excruciating detail on the intricacies of each signature.  [See e.g., Docket No. 75, p. 16] ("The 'l' in McCaslin is not written on the line in both receipts and the 'l' exceeds the top line of the box.").  At first blush, McCaslin's

---

      [6]Three delivery receipts are in question -- Excel, Beacon, and Zipp Logistics.  However, it is unclear on which receipt McCaslin claims his signature is forged.  For example, in his introduction, and referring to the Excel and Zipp Logistics receipts, McCaslin claims that "the delivery receipts submitted by USF Holland to substantiate the claims made by Dave Woolsey appear to be forged." [Docket No. 75, p. 3] (emphasis added).  Later, in his Statement of Material Facts in Dispute, McCaslin states that the "signature on the Excel Tool delivery receipt is forged." [Docket No. 75, p. 6].  Finally, in his argument section, McCaslin claims that it is the Beacon receipt that is of questionable authenticity. [Docket No. 75, pp. 16-17].  As best the Court can decipher, McCaslin claims only the Beacon receipt to be forged.  For example, in his deposition, McCaslin admitted that the Excel freight bill was his and contained his signature. [McCaslin Dep., pp. 191, 194].  However, also in his deposition, McCaslin claimed that his signature on the Beacon receipt had been forged because McCaslin "could show you another bill that [he] delivered on where they took that off another bill I signed and added to this piece of paper." [McCaslin Dep., p. 130].  That "other bill" is apparently the Zipp Logistics receipt as that is the comparator used by McCaslin in his brief.

argument borders on the absurd.  Indeed, McCaslin claims his signature on the Beacon delivery receipt is forged because it looks like his signature.  However, as the Court understands McCaslin's argument, McCaslin believes his signature on the Beacon receipt to be forged because it is <u>exactly</u> like the signature on the Zipp Logistics receipt in <u>every</u> respect, including where it fits in the signature box and where and how certain parts of the signature cross lines and exceed the boundaries of the box.  It is here where McCaslin's argument fails.

     As noted above, at the summary judgment stage, the Court must view all facts and draw all inferences in a light most favorable to McCaslin, the nonmoving party.  However, despite McCaslin's detailed argument to the contrary, even an untrained eye must conclude that the signatures on the Zipp Logistics and Beacon receipts are not identical.  To be sure, they are similar (as signatures tend to be), but they are not identical.  Accordingly, McCaslin is not entitled to the inference that the signatures are identical, and therefore the Beacon signature must be forged, because that is not a reasonable inference.  Nonetheless, McCaslin disputes that he signed the Beacon receipt.  Thus, at the summary judgment stage, the Court assumes that he did not.

     Finally, the authenticity of the delivery receipts does not affect the outcome of this issue.  As argued by USF in reply, McCaslin's belief that someone forged his signature on the Beacon receipt "is meaningless precisely and exactly because <u>McCaslin admits that the times he reported for Beacon were wrong</u>!"  [Docket No. 79, p. 7].  The Court agrees.  McCaslin's arguments regarding his signatures appear to be nothing more than subterfuge to divert attention from the weakness of his case.  As noted in the background section above, McCaslin concedes that at least some of the times on his manifest are wrong.  He admitted that the delivery to Union Hardware

actually occurred "before noon," not at 2:40-2:50 in the afternoon as reported. [McCaslin Dep., pp. 205-06, 235; USF Ex. 8, p. 19].  McCaslin also conceded that the times he wrote in for Beacon were incorrect and he was actually parked at Beacon for "at least 30 minutes." [McCaslin, pp. 201, 205-06; USF Ex. 8, p. 23].  Finally, McCaslin agreed in his deposition that, because he actually delivered to Union Hardware around noon and his manifest contains sequential times without excess time in between for another delivery, at least one of the other times McCaslin recorded around noon must also be wrong.  [McCaslin Dep., pp. 235-38].  Based on these undisputed facts, the Court finds that USF had just cause to terminate McCaslin's employment for falsifying his manifest.  Accordingly, USF did not breach the CBA by terminating McCaslin's employment.

   **B.**  **Breach of Duty of Fair Representation.**

 Because McCaslin cannot survive summary judgment on his claim that USF violated the CBA, his claim against Local 135 is also doomed.  Even if McCaslin's claim against USF had survived summary judgment, his claim against Local 135 fails on the merits.

  "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998).  Each of these elements -- arbitrary, discriminatory, and bad faith -- are separate parts of the fair representation test, and must be analyzed individually. Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997).  However, McCaslin argues only that Local 135 processed his grievance arbitrarily.  Accordingly, the Court focuses on that part of the fair representation analysis.

  "To be 'arbitrary,' a union's conduct toward its member must be 'so far outside a wide

range of reasonableness that it is wholly irrational or arbitrary.'"  Crider, 130 F.3d at 1243, quoting Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991).  The test is quite forgiving, and courts "'should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.'"  Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995), quoting Ooley v. Schwitzer, 961 F.2d 1293, 1302 (7th Cir. 1992).  Simply put, Local 135's actions do not even approach the level of unreasonableness required to be considered arbitrary.

McCaslin's main argument with respect to the alleged arbitrary nature of Local 135's representation focuses on Local 135's investigation of the grievance.  According to McCaslin, Local 135 did not provide him with even a minimal investigation.[7]  Once again, McCaslin's argument focuses on factual disputes immaterial to the ultimate issue before the Court.  For example, the crux of McCaslin's discontent with Local 135 involves the delivery receipts presented at the Area hearing.  McCaslin contends that Local 135 acted arbitrarily because Lyons, the union steward, did not speak with either Darrell Morris or Jesse Asher, the individuals who provided written statements on the receipts regarding the time and/or duration of the deliveries.  Moreover, McCaslin faults Lyons for failing to procure the delivery receipts prior to the Area hearing and alleges that he "had no opportunity to review, comment, or question the

---

[7]Although unclear, McCaslin hints that Local 135 was required to provide a "full investigation."  [Docket No. 75, p. 9].  However, this is not the standard by which Local 135's actions are measured.  "The union must provide 'some minimal investigation of employee grievances,' but the thoroughness of this investigation depends on the particular case, and 'only an egregious disregard for union members' rights constitutes a breach of the union's duty.'  What is required to be shown goes considerably beyond the requirements of a malpractice suit."  Garcia, 58 F.3d at 1176 (internal citations omitted).

14

authenticity or veracity of these documents except at the hearing where his termination was being challenged." [Docket No. 75, p. 11]. As explained above, however, the outcome of this matter does not turn on the authenticity (or veracity) of the delivery receipts because McCaslin admitted that the delivery times he wrote on his manifest were incorrect. In order for McCaslin to prevail on the issue of whether Local 135 provided fair representation, he must "establish that the outcome of the [grievance hearing] would probably have been different but for the union's activities." Garcia, 58 F.3d at 1177. McCaslin fails in this regard. In short, McCaslin's hybrid 301 action fails and Defendants are entitled to summary judgment on those claims.

**C.      Fraud and Defamation Against USF.**

As noted above, although McCaslin voluntarily dismissed his claims of fraud and defamation against Local 135, those claims remain as to USF. USF seeks summary judgment on these claims, arguing that they are preempted by § 301 and, in any event, fail on their merits. McCaslin did not specifically abandon these claims. Nor did he respond to USF's motion in this regard. The Court, having reviewed USF's arguments with respect to McCaslin's state law claims, finds that they are well taken. Accordingly, USF's motion for summary judgment with respect to McCaslin's fraud and defamation claims is granted.

**D.      Local 135's Motion for Rule 11 Sanctions.**

After the Defendants' motions for summary judgment were fully briefed, Defendant Local 135 filed a motion for sanctions pursuant to Fed. R. Civ. P. 11, alleging that McCaslin's suit is frivolous and lacks evidentiary support. To be sure, for the reasons noted above, McCaslin's arguments lack merit and the Defendants are entitled to summary judgment. Whether McCaslin's case is properly deemed frivolous for sanctions purposes is a close call.

McCaslin's counsel argues against sanctions on the basis that he inherited this case from an associate that is no longer with his firm.  Moreover, McCaslin's counsel argues that he should not be punished for believing in his client.  Neither of these arguments is particularly persuasive.  Regardless of whether McCaslin's counsel inherited this case from another attorney, he has represented McCaslin's interest long enough to make a reasoned decision as to its merits.  Moreover, counsel's determination to pursue legal action must be based on reasoned legal analysis in light of the evidence and not blind faith in his client's story.

On the other hand, as Judge Tinder once observed, in certain instances "winning ought to be enough for the Defendant.  There is no need to scorch the field on which the battle was fought."  McDaniel v. Eaglecare, Inc., IP 00-0413-C-T/K, slip op. at 7 (S.D. Ind. Sept. 27, 2002).  Following this admonition, the Court chooses not to sanction McCaslin or his counsel given the arguments and evidence presented in the summary judgment briefing.  Local 135's motion for sanctions is denied.

**V.	Conclusion.**

Defendants' motions for summary judgment [Docket Nos. 68, 70] are GRANTED as to all claims.  Defendant Local 135's motion for Rule 11 sanctions [Docket No. 81] is DENIED.  Final judgment shall be entered accordingly.  Costs are awarded to the Defendants.

SO ORDERED.  Dated:  06/09/2005

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

John Anton Berg
CONNELLY SHEEHAN MORAN
jberg@csm-law.com

Kevin P. Connelly
CONNELLY SHEEHAN MORAN
kconnelly@csm-law.com

Rachel R. Cowen
CONNELLY SHEEHAN MORAN
150 South Wacker Drive, Suite 1600
Chicago, IL 60606

Edward R. Hannon
HANNON HUTTON & ASSOCIATES, P.C.
ehannon@hannonhutton.com

Geoffrey S. Lohman
FILLENWARTH DENNERLINE GROTH & TOWE
glohman@fdgtlaborlaw.com

Donald S. Smith
RILEY BENNETT & EGLOFF LLP
dsmith@rbelaw.com

Fred O. Towe
FILLENWARTH DENNERLINE GROTH & TOWE
ftowe@fdgtlaborlaw.com